Filed 8/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KELLYMAY RACHELL WATTS,<br><br>    Defendant and Appellant. | A145322<br><br>(Mendocino County<br>Super. Ct. No. SCUKCRCR1580346) |

Defendant Kellymay Watts appeals from an order granting probation following her plea of no contest to possession of methamphetamine for sale. Her appellate counsel asked this court for an independent review of the record to determine whether there are any arguable issues. (*People v. Wende* (1979) 25 Cal.3d 436.) We requested briefing on whether the criminal laboratory analysis (crime-lab) fee imposed under Health and Safety Code[1] section 11372.5 is subject to penalty assessments, which are proportionately levied on some monetary charges imposed on criminal defendants. We did so because a recent decision from the Appellate Division of the Nevada County Superior Court, *People v. Moore* (2015) 236 Cal.App.4th Supp. 10 (*Moore*) concluded, contrary to the weight of authority, that the crime-lab fee is not subject to penalty assessments. Although we decline to adopt *Moore*'s rationale, we agree with its holding that the crime-lab fee is not subject to penalty assessments. As a result, we order the penalty assessments imposed on the crime-lab fee stricken but otherwise affirm.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise noted.

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

In January 2015, a Fort Bragg police officer found Watts in possession of 3.86 grams of methamphetamine and 1.16 grams of heroin, as well as assorted drug paraphernalia.[2] "[N]umerous text messages . . . indicating sales of controlled substances" were found on Watts's cell phone. Watts was charged with a felony count of possession of heroin for sale.[3] Under a plea agreement, she pleaded no contest to that count, which was amended to refer to methamphetamine instead of heroin.

The trial court suspended imposition of the sentence and placed Watts on probation for 36 months subject to various conditions, including that she serve 120 days in county jail. Among other fines and fees, the court imposed "the $190 [crime-lab] fee under [section] 11372.5 of the Health and Safety Code," and an addendum to the probation order stated that the $190 "[f]ee imposed include[d] penalty assessments and surcharges as required." Watts did not object to the imposition of the crime-lab fee or the associated assessments.[4]

---

[2] The facts in this paragraph are drawn from the probation report.

[3] The charge was brought under section 11378.

[4] Penal Code section 1237.2 prohibits appeals in which the sole issue raised involves "the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs" if the defendant does not first object or seek correction in the trial court. That statute became effective on January 1, 2016, however, and does not affect this appeal, which was filed in June 2015. (See Pen. Code, § 3 [Penal Code provisions not retroactive "unless expressly so declared"].) Nor did Watts forfeit her claim despite her failure to object below to the imposition of penalty assessments on the crime-lab fee.
" ' "[U]nauthorized sentences," ' " that is, "obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings[,] are not waivable" (*People v. Smith* (2001) 24 Cal.4th 849, 852), and we may address a claim of error in the imposition of assessments even if there was no objection at the time of sentencing. (*People v. Talibdeen* (2002) 27 Cal.4th 1151, 1157 (*Talibdeen*).)

## II.
### DISCUSSION

Watts argues on appeal that the $50 crime-lab fee authorized by section 11372.5 is not subject to penalty assessments and that the trial court therefore erred by imposing an additional $140. We agree.

### A. *Monetary Charges Imposed in Criminal Cases.*

We begin by describing three different categories of monetary charges that may be imposed on a criminal defendant and that are relevant to the issues in this appeal.[5] We do so because these categories are ill-defined. As one justice aptly observed in 2009, the Legislature has created an "increasingly complex system of fines, fees, and penalties," leaving it "doubtful that criminal trial lawyers and trial court judges have the ability to keep track of the myriad [] charges that now attach to criminal convictions." (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1533-1534 (conc. opn. of Kriegler, J.).) This justice correctly predicted that "[t]he system, as it exists, is likely to only become more complicated in the immediate future." (*Ibid.*; see *People v. Hamed* (2013) 221 Cal.App.4th 928, 939 [recognizing increasing difficulty of accurately imposing penalty assessments].) Making sense of the system is particularly difficult because the Legislature has described criminal monetary charges with a variety of terms, such as fine, fee, assessment, increment, and penalty, while sometimes assigning different meanings to the same term.

The first category of monetary charges that may be imposed includes charges to punish the defendant for the crime. (*People v. Sorenson* (2005) 125 Cal.App.4th 612, 617.) These charges are often referred to as base fines (see *ibid.*), and throughout this opinion we shall refer to them as such with the understanding that statutes sometimes use the term fine with a broader meaning. Trial courts often have discretion over whether and in what amount to impose base fines.

---

[5] Other categories of monetary charges that we do not discuss include restitution fines, which are clearly exempted from penalty assessments under the various assessment statutes. (See, e.g., Pen. Code, § 1464, subd. (a)(3)(A).)

The second category of charges that may be imposed includes charges to cover a particular governmental program or administrative cost. (See, e.g., Pen. Code, § 1465.8, subds. (a) & (b); *People v. Alford* (2007) 42 Cal.4th 749, 756 [discussing court security fee under Penal Code section 1465.8].) These charges are usually referred to as fees and, as with base fines, trial courts often have discretion over whether to impose them.

The third category of charges includes penalty assessments, which, when applicable, inflate the total sum imposed on the defendant by increasing certain charges by percentage increments. All current penalty assessments are legislatively expressed as a certain dollar amount "for every ten dollars ($10), or part of ($10)," for the particular fine, penalty, or forfeiture that is subject to the assessments. (E.g., Pen. Code, § 1464, subd. (a)(1).) Thus, for example, if the base fine is $100 and the penalty assessment is $2 for every $10 imposed, the penalty assessment increases the defendant's base fine by $20, or 20 percent. If the same penalty assessment is imposed on a base fine of $105, the penalty assessment is $22, and the percentage increase is slightly more than 20 percent. For the sake of simplicity, we shall refer to penalty assessments in terms of the percentage by which they increase every $10 of a subject charge.

The first penalty assessments were created over half a century ago. (See, e.g., *People v. Aronow* (1955) 130 Cal.App.2d Supp. 898, 899-900 [discussing penalty assessment under former Vehicle Code section 773].) In 1980, various penalty assessments were consolidated into a single one under Penal Code section 1464. (Stats. 1980, ch. 530, § 4, pp. 1476-1477; Assem. Com. on Crim. Justice, Analysis of Assem. Bill No. 493 (1979-1980 Reg. Sess.) as amended Jan. 28, 1980.) In subsequent years, six more assessments were created that, like the assessment under Penal Code section 1464, apply to "every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses." (Pen. Code, § 1464, subd. (a).) Although these "parasitic" assessments punish a defendant in the sense that they increase the total monetary charge imposed, they were created in large part to generate revenue and are deposited into various state and county funds. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1374

4

[characterizing assessments as "punitive fundraising measures"]; see, e.g., Pen. Code,
§ 1464, subds. (e) & (f).)

  B.  *The Crime-lab Fee Is Not Subject to Penalty Assessments.*

  With these categories in mind, we turn to examine whether the crime-lab fee was subject to the seven penalty assessments that the parties agree are potentially applicable: (1) the 100 percent state penalty under Penal Code section 1464, subdivision (a)(1); (2) the 20 percent state surcharge under Penal Code section 1465.7, subdivision (a); (3) the 50 percent court-construction penalty under Government Code section 70372, subdivision (a)(1); (4) the 70 percent county penalty under Government Code section 76000, subdivision (a)(1); (5) the 20 percent emergency-medical-services penalty under Government Code section 76000.5, subdivision (a)(1); (6) the 10 percent Proposition 69 DNA penalty under Government Code section 76104.6, subdivision (a)(1); and (7) the 40 percent state-only DNA penalty under Government Code section 76104.7, subdivision (a). All together, these assessments increase the charges to which they apply by a total of 310 percent.

  The question we must resolve here is whether the $50 crime-lab fee is a "fine, penalty, or forfeiture" subject to penalty assessments. If it is, it was subject to a 310 percent increase.[6] If it is not, it should have been imposed in the amount of $50.

  For the answer to this question, we start by looking at the statute establishing the crime-lab fee. Under section 11372.5, subdivision (a) (section 11372.5(a)), anyone convicted of an enumerated crime, including the one of which Watts was convicted, is required to "pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary to include this increment. [¶] With respect to those offenses specified in this subdivision for which a

---

[6] The parties agree that, if penalty assessments applied, the trial court should have imposed them in the amount of $155 (310 percent of $50), not $140. It seems that a different figure, $190, which appears in a preprinted form provided by the probation department, resulted through a failure to account for the increase in the state-only DNA penalty from 10 percent when it was originally enacted to the current 40 percent. (Stats. 2006, ch. 69, § 18, p. 1251.)

fine is not authorized by other provisions of law, the court shall, upon conviction, impose a fine in an amount not to exceed fifty dollars ($50), which shall constitute the increment prescribed by this section and which shall be in addition to any other penalty prescribed by law."

" ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." ' " (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.)  We first consider the statutory language, " ' "giving [it] a plain and commonsense meaning." ' " (*Ibid.*)  " ' " 'When [that] language . . . is clear, we need go no further.' [Citation.]  But where a statute's terms are unclear or ambiguous, we may 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " ' " (*Ibid.*)  We review issues of statutory interpretation de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

Initially, we address and reject the Attorney General's contention that our state "Supreme Court . . . unequivocally established that the [crime-lab] fee is subject to penalty assessments" in *Talibdeen*, *supra*, 27 Cal.4th 1151.  In *Talibdeen*, the trial court imposed the fee but no associated penalty assessments, and the People did not object. (*Id.* at p. 1153.)  The Court of Appeal then imposed the state penalty under Penal Code section 1464 and county penalty under Government Code section 76000, reasoning that both penalties were mandatory.[7] (*Talibdeen*, at p. 1153.)  The issue before the Supreme Court was whether the People had forfeited their appellate demand for penalty assessments, and such a forfeiture would have occurred only if the assessments were deemed discretionary.  (*Ibid.*; see *People v. Smith*, *supra*, 24 Cal.4th at p. 853.) Interpreting Penal Code section 1464 and Government Code section 76000, *Talibdeen* determined that the two assessments were mandatory, and it therefore affirmed the Court of Appeal's imposition of them.  (*Talibdeen*, at pp. 1153-1154, 1157.)

---

[7] The other five penalty assessments listed above had not yet been established at the time *Talibdeen*, *supra*, 27 Cal.4th 1151 was decided.

We disagree with the Attorney General that *Talibdeen*, *supra*, 27 Cal.4th 1151 establishes that the crime-lab fee is subject to penalty assessments. "[I]t is axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.) The defendant in *Talibdeen* never argued that the assessments were inapplicable, and the Supreme Court never mentioned section 11372.5's language. Instead, the court focused on whether the statutes establishing the state and county penalties gave a sentencing court discretion to waive those assessments, based on a provision allowing waiver " '[i]n any case where a person convicted of any offense, to which this section applies, is in prison until the fine is satisfied.' " (*Talibdeen*, at p. 1154, quoting Pen. Code, § 1464, subd. (d).) Thus, the court assumed, but never decided, that sentencing courts are required to impose penalty assessments on the crime-lab fee. Consequently, *Talibdeen* is not authority for the proposition that penalty assessments apply to the fee. Nor are other decisions that cite *Talibdeen* for that proposition without further analysis. (E.g., *People v. Taylor* (2004) 118 Cal.App.4th 454, 456.)

Having concluded that *Talibdeen*, *supra*, 27 Cal.4th 1151 is not binding on us, we turn back to the language of section 11372.5(a) and note its internal inconsistency. The first paragraph of the provision characterizes the crime-lab fee as a "criminal laboratory analysis *fee*," but the second paragraph characterizes the $50 charge as a "*fine*." (§ 11372.5(a), italics added.) For reasons we shall discuss, we conclude that the most sensible interpretation is that the Legislature intended the crime-lab fee to be exactly what it called it in the first paragraph, a fee, and not a fine, penalty, or forfeiture subject to penalty assessments.

We disagree with the Court of Appeal decisions that have failed to differentiate between these two paragraphs in concluding that the crime-lab fee is necessarily subject to penalty assessments. The leading case is *People v. Martinez* (1998) 65 Cal.App.4th 1511 (*Martinez*), in which the Second District Court of Appeal primarily relied on an earlier decision of the Fifth District Court of Appeal, *People v. Sierra* (1995) 37 Cal.App.4th 1690 (*Sierra*), which had held that the drug-program fee under section

7

11372.7 is subject to penalty assessments.[8] (*Martinez*, at p. 1522, citing *Sierra*, at p. 1693.) In language similar to that in section 11372.5(a), section 11372.7 provides that "[t]he court shall increase the total fine, if necessary, to include this increment [the drug-program fee], which shall be in addition to any other penalty prescribed by law." (§ 11372.7, subd. (a).) The Fifth District observed that the statute "defines the drug program fee as an increase to the 'total fine' and later as a fine in addition 'to any *other penalty*.' [] In other words, section 11372.7, subdivision (a) describes itself as both a fine and/or a penalty." (*Sierra*, at p. 1695, italics in original.) Thus, the court reasoned, penalty assessments were required because they must be imposed " 'upon every *fine, penalty*, or forfeiture.' " (*Ibid.*, quoting Gov. Code, § 76000, italics in original; see also Pen. Code, § 1464, subd. (a).)

Relying on the Fifth District's reasoning, the Second District concluded that the crime-lab fee must also be subject to penalty assessments because section 11372.5 "defines the [subject] fee as an increase to the total fine." (*Martinez*, *supra*, 65 Cal.App.4th at p. 1522.) *Martinez* also cited an earlier case in which the Second District had "held [that] the [crime-lab] fee is a fine" in the context of determining whether that fee has to be included on the abstract of judgment. (*Ibid.*, citing *People v. Sanchez* (1998) 64 Cal.App.4th 1329, 1332 [reasoning that section 11372.5 describes crime-lab fee "as an increment of a fine"].) Several subsequent published decisions, primarily from the Second District, have followed *Martinez* and held that the crime-lab fee is subject to penalty assessments. (E.g., *People v. McCoy* (2007) 156 Cal.App.4th 1246, 1251-1252; *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1257; see also *People v. Sharret* (2011) 191 Cal.App.4th 859, 863-864.)

More recently, however, the Appellate Division of the Nevada County Superior Court rejected the reasoning of *Sierra*, *supra*, 37 Cal.App.4th 1690, and by extension *Martinez*, *supra*, 65 Cal.App.4th 1511, and held that the crime-lab fee is not subject to

---

[8] The trial court chose not to impose a drug-program fee here "[b]ased on [Watts's] financial circumstances." That fee, unlike the crime-lab fee, is conditioned on a defendant's ability to pay. (§ 11372.7, subd. (b).)

penalty assessments.[9] (*Moore*, *supra*, 236 Cal.App.4th Supp. at pp. 15-19 & fn. 4.) *Moore* pointed out that the Second District Court of Appeal had concluded in *People v. Vega* (2005) 130 Cal.App.4th 183 (*Vega*) that the crime-lab fee was not "punishment" under Penal Code section 182, subdivision (a) because it is an administrative fee, not a fine, and therefore cannot be imposed on defendants convicted of a conspiracy to commit one of the crimes listed in section 11372.5. (*Vega*, at pp. 194-195; *Moore*, at pp. 15-16.) *Moore* criticized *Sierra*'s focus on the phrase " 'fine, penalty, or forfeiture' " in the statutory language governing assessments, which "sent the *Sierra* . . . court[] on [its] . . . mission[] to decide whether the . . . drug program fee[] [was] somehow punitive, or rather an administrative reimbursement." (*Moore*, at p. 16.) *Moore* believed that mission "amounted to a fool's errand" because of the imprecision of the language used to characterize various fines and fees in the relevant statutes.[10] (*Ibid*.)

Moore found more significant section 11372.5(a)'s direction that a trial court " 'shall increase the total fine necessary to include this increment,' " that is, the crime-lab fee. (*Moore*, *supra*, 236 Cal.App.4th Supp. at p. 17, quoting § 11372.5(a).) *Moore* pointed out that Penal Code section 1463, subdivision (*l*) defines " 'total fine' . . . as including *both* the base fine *and* the penalty assessments levied thereon." (*Moore*, at p. 17, italics in original.) Thus, in contrast to *Sierra*, *supra*, 37 Cal.App.4th 1690, which reasoned that the crime-lab fee must be a "fine" because it is added to the "total fine," *Moore* determined that the fee is not part of the base fine subject to penalty assessments but instead is added to the total amount owed by the defendant after the assessments are calculated. (*Moore*, at pp. 17-18.) *Moore* concluded that "[t]he inclusion of these [crime-lab] . . . fees into the base fine, and then the subsequent improper levy of penalty

---

[9] "Appellate division decisions have persuasive value, but they are of debatable strength as precedents and are not binding on higher reviewing courts." (*Velasquez v. Superior Court* (2014) 227 Cal.App.4th 1471, 1477, fn. 7.)

[10] *Moore*, *supra*, 236 Cal.App.4th Supp. 10 levied the same criticism at *Vega*, 130 Cal.App.4th 183, even though *Vega* addressed the term "punishment" under Penal Code section 182, subdivision (a), not the phrase "fine, penalty, or forfeiture" under the statutes governing penalty assessments. (*Vega*, at pp. 194-195; *Moore*, at p. 16.)

assessments upon a fee that is not part of the 'base fine' upon which such penalty assessments must be calculated according to Penal Code section 1463, subdivision (*l*)(1) is patent error." (*Moore*, at p. 17.)

Although we agree with *Moore*'s conclusion that the crime-lab fee is not subject to penalty assessments, we disagree with the decision's reliance on Penal Code section 1463 in interpreting the phrase "total fine." (*Moore*, *supra*, 236 Cal.App.4th Supp. at p. 17.) To begin with, that statute provides that "[t]he following definitions shall apply to terms *used in this chapter*"—that is, Chapter 1 of Title 11 of Part 2 of the Penal Code. (Pen. Code, § 1463, italics added.) This definition does not apply to the crime-lab fee because section 11372.5 is not contained within that chapter. (See *People v. Grayson* (2000) 83 Cal.App.4th 479, 485 [definition that "applie[d] '[f]or the purposes of this part' " applied only to specified part of Health and Safety Code].) Furthermore, even if it otherwise would be proper to rely on Penal Code section 1463, subdivision (*l*)'s definition in interpreting "total fine" as used in section 11372.5(a), there is no basis to conclude that the Legislature intended that definition to apply: section 11372.5, which has always contained the term "total fine," was enacted more than a decade *before* the definitions in section 1463 were established. (Stats. 1991, ch. 189, § 18, pp. 1451-1452; Stats. 1980, ch. 1222, § 1, p. 4140.)

But while the rationale of *Moore* is not compelling, neither is the rationale of *Martinez*, *Sierra,* or the courts that have followed them, under which section 11372.5(a)'s references to the phrases "total fine," "fine," and "any other penalty" somehow establish that the crime-lab fee constitutes a "fine" or "penalty" within the meaning of the statutes governing penalty assessments. As to the statute's reference to "total fine," we fail to perceive how the fact that the crime-lab fee increases the "total fine" necessarily means the fee is itself a "fine" subject to penalty assessments. Nothing about the statute's use of the phrase "total fine" is inconsistent with the conclusion that the crime-lab fee simply gets added to the overall charge imposed on the defendant after penalty assessments are calculated. And as to the statute's references to the word "fine" and the phrase "any other penalty," they appear only in section 11327.5(a)'s second paragraph, which applies

10

only to offenses "for which a fine is not authorized by other provisions of law." As we explain below, since there are currently no such offenses covered by section 11372.5, in our view the language in the second paragraph does not control over the language in the first paragraph, which currently applies to all covered offenses.

Section 11372.5's legislative evolution bolsters the conclusion that the Legislature's characterization of the crime-lab fee as a "criminal laboratory analysis fee" reflects an intent to treat the charge as an administrative fee not subject to penalty assessments in circumstances that are not governed by the second paragraph of subdivision (a). When section 11372.5 was originally enacted in 1980, it required every person convicted of an enumerated offense to, "as part of any *fine* imposed, pay an *increment* in the amount of fifty dollars ($50) for each separate offense." (Stats. 1980, ch. 1222, § 1, p. 4140, italics added.) This portion of the statute was later amended to require every person convicted of a covered offense to "pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense." (Stats. 1983, ch. 626, § 1, p. 2527.) The elimination of the reference to the fee's being part of the "fine imposed" and its renaming from an "increment" to a "fee" strongly suggest that the Legislature did not intend the fee to be a "fine, penalty, or forfeiture" because section 11372.5 calls it something else.

Even if we were to accept, as other courts have concluded, that the Legislature's choice of the word "fee" to describe the crime-lab fee is not determinative, the crime-lab fee cannot be fairly characterized as fitting into any of the categories of monetary charges subject to penalty assessments. First, the fee is clearly not a "forfeiture," which refers to the forfeiture of bail. (See, e.g., Pen. Code, § 1464, subd. (c); *Martinez*, *supra*, 65 Cal.App.4th at p. 1520.) Second, fines and penalties constitute punishment. (*People v. Alford*, *supra*, 42 Cal.4th at p. 757 [fines]; *People v. High* (2004) 119 Cal.App.4th 1192, 1199 [penalties].) The crime-lab fee, on the other hand, is a fixed charge that is "imposed to defray administrative costs," not "for retribution and deterrence." (*Vega*, *supra*, 130 Cal.App.4th at p. 195; see also *People v. Wallace* (2004) 120 Cal.App.4th 867, 876 ["fee" is "more nonpunitive term" than "fine"].) As *Vega*

11

explained, "It is clear to us [that] the main purpose of . . . section 11372.5 is not to exact retribution against drug dealers or to deter drug dealing (given the amount of money involved in drug trafficking a $50 fine would hardly be noticed) but rather to offset the administrative cost of testing the purported drugs the defendant transported or possessed for sale in order to secure his [or her] conviction. The legislative description of the charge as a 'laboratory *analysis* fee' strongly supports our conclusion, as does the fact [that] the charge is a flat amount, it does not slide up or down depending on the seriousness of the crime, and the proceeds from the fee must be deposited into a special 'criminalistics laboratories fund' maintained in each county by the county treasurer." (*Vega*, at p. 195, subd. (b), italics in original.)[11] Although *Vega* is not directly on point because it addressed whether the crime-lab fee could be imposed at all, not whether it was subject to penalty assessments, the decision persuades us that the fee is by its nature not punishment and therefore not a "fine" or "penalty" except in circumstances in which the second paragraph of section 11372.5(a) may apply.

Being unconvinced by the rationale of other authorities that have failed to grapple with the different language used in section 11372.5(a)'s two paragraphs, we turn to consider how the second paragraph should be interpreted. As we have said, the second paragraph establishes that in the case of an offense "for which a fine is not authorized by other provisions of law," the crime-lab fee acts as a fine and is, in turn, subject to penalty assessments. The most reasonable interpretation of the phrase "not authorized by other provisions of law" is that it refers to offenses for which no separate fine is *permitted* to be imposed. (See Black's Law Dict. (8th ed. 2004) p. 143 [defining "authorize" as "[t]o formally approve; to sanction"].) Under this interpretation, the second paragraph does not apply to Watts's offense. Although "[m]any criminal statutes provide for the

---

[11] We are aware that a different division of the Second District Court of Appeal concluded that the crime-lab fee *is* punishment in the context of determining whether to stay the fee under Penal Code section 654. (*People v. Sharret*, *supra*, 191 Cal.App.4th at p. 869.) *Sharret* does not address *Vega*, however, and is unpersuasive for a number of reasons, including that it assumed that the fee is a "fine" and therefore constitutes punishment. (*Sharret*, at pp. 869-870.)

imposition of a base fine in addition to a jail or prison sentence, . . . [w]here the criminal statute does not prescribe [such a] fine, [Penal Code] section 672 authorizes the trial court to impose a fine." (*People v. Uffelman* (2015) 240 Cal.App.4th 195, 197.) Under Penal Code section 672, a trial court may impose a fine of up to $10,000 for any felony or up to $1,000 for any misdemeanor "punishable by imprisonment in any jail or prison . . . in relation to which no fine is [otherwise] prescribed." (Pen. Code, § 672; *People v. Breazell* (2002) 104 Cal.App.4th 298, 302-304.) Here, although the statute under which Watts was convicted, section 11378, does not provide for a base fine, the offense is punishable by imprisonment in county jail (§ 11378; Pen. Code, § 1170, subd. (h)) and is thus subject to a fine under Penal Code section 672.

Although we believe that it makes the most sense to interpret the second paragraph of section 11372.5(a) to apply only to offenses for which no separate fine is permitted to be imposed, we recognize that there are presently no such offenses subject to the crime-lab fee. In other words, the second paragraph of section 11372.5(a) has no current application and, in that sense, is surplusage. "It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage," and " '[a]n interpretation that renders statutory language a nullity is obviously to be avoided.' " (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038-1039.) Section 11372.5(a) lists 29 offenses that are subject to the crime-lab fee. Of them, two no longer exist (§ 11380.5; Bus. & Prof. Code, § 4230); three are subject to a fine under the criminalizing statute itself (§§ 11357, subds. (a) & (c), 11379.6, subd. (a)); eight are subject to a fine of up to $20,000 under section 11372, subdivision (a) (§§ 11350, 11351, 11351.5, 11352, 11355, 11359, 11360, subd. (a), 11361); and the remaining 16 are punishable by confinement in either prison or county jail and are therefore subject to a fine under Penal Code section 672. (§§ 11358, 11363, 11364, 11368, 11375, 11377,

11378, 11378.5, 11379, 11379.5, 11380, 11382, 11383, 11390, 11391, 11550.)[12] Thus, the second paragraph of section 11372.5(a) apparently describes a null set.

We have been unable to trace the root of this interpretive difficulty to amendments either to section 11372.5 or to the laws governing other fines. A substantially similar second paragraph of subdivision (a) was present in section 11372.5 as originally enacted by Senate Bill No. 1535 (SB 1535). (Stats. 1980, ch. 1222, § 1, p. 4140.) At the time, section 11372.5 covered 17 offenses, two of which were subject to base fines under the statute itself (former § 11357, subds. (a) & (c)), five of which were subject to base fines under former section 11372 (former §§ 11350, 11351, 11352, 11359, 11360, subd. (a)), and ten of which were subject to base fines under former Penal Code section 672. (§§ 11358, 11363, 11364, 11368, 11377, 11378, 11378.5, 11379, 11379.5, 11383.) In other words, a separate fine was permitted for each of the covered offenses at the time section 11372.5 was enacted as well.

Nor have we been able to trace the reason for the inclusion of the second paragraph of section 11372.5(a). There is some suggestion in the legislative history of SB 1535 that this paragraph was added "because often individuals convicted of crimes are placed on probation or sent to prison in lieu of a fine and the $50 surcharge would be collected only when a fine is imposed." (Legis. Analyst, analysis of SB 1535 (1979-1980 Reg. Sess.), as amended July 8, 1980, p. 3.) It may be that the second paragraph was added to address the concern that because the first paragraph refers to the crime-lab fee's being added to the "total fine"—as well as, in language that was later removed from the statute, to the crime-lab fee's being "part of any fine imposed"—the crime-lab fee could not be imposed in any case in which a separate fine was not *actually* imposed, whether or

_____

[12] Although sections 11377, subdivision (c) and 11550, subdivision (d) authorize the imposition of a $70 fine for AIDS education, that fine "is expressly intended to be additional to any fines [a] court may impose" for the various offenses subject to it, and a base fine under Penal Code 672 may be imposed on those who violate section 11377 (or, by extension, section 11550). (*People v. Clark* (1992) 7 Cal.App.4th 1041, 1044-1046.) The AIDS-education fine may also be imposed for a conviction under section 11350, which is, as already indicated, subject to a base fine of up to $20,000 as well. (§§ 11350, subd. (c), 11372, subd. (a).)

14

not it *could* be imposed.  But to read "not authorized by other provisions of law" to mean "not imposed" is too strained an interpretation of the statutory language.  Ultimately, the rule against surplusage "is not absolute" and "will be applied only if it results in a *reasonable* reading of the legislation."  (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 234-235, italics in original.)  Giving the second paragraph's words their ordinary meaning, we conclude that Watts's offense, like all the others presently covered by section 11372.5, is not one "for which a fine is not authorized by other provisions of law."[13]  As a result, the first paragraph's characterization of the crime-lab fee as a fee is controlling, and penalty assessments should not have been imposed on it.

### III.
### DISPOSITION

The May 20, 2015 order granting probation is modified to strike the penalty assessments imposed on the crime-lab fee under section 11372.5, reducing the amount due from $190 to $50.  As so modified, the order is affirmed.

---

[13] In holding that the crime-lab fee is not subject to penalty assessments, we do not rule out the possibility that future statutory changes could render the second paragraph of section 11372.5(a) applicable to a particular offense, in which case the fee *would* be subject to assessments.

15

_____

Humes, P.J.

We concur:


_____

Margulies, J.


_____

Banke, J.


_People v. Watts_ (A145322)

16

Trial Court:                    Mendocino County Superior Court

Trial Judge:                    Honorable John A. Behnke

Counsel for Appellant:          Randall H. Conner, under appointment by the First
                                District Appellate Project

Counsel for Respondent:         Kamala D. Harris, Attorney General; Gerald A. Engler,
                                Chief Assistant Attorney General; Huy T. Luong,
                                Deputy Attorney General