Filed 7/12/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID DONALD WEBB,<br><br>    Defendant and Appellant. | A147740<br><br>(Contra Costa County<br>Super. Ct. No. 5-151712-7) |

Defendant David Donald Webb appeals from a judgment convicting him of, among other things, driving a vehicle without consent, possession for sale of methamphetamine, and identity theft. He contends his trial attorney provided ineffective assistance by failing to move to dismiss the identity theft charge under the so-called *Williamson*[1] rule. Defendant also contends that the court erred in imposing penalty assessments on fees imposed under the Health and Safety Code and in requiring him to pay $500 in attorney fees. We reject defendant's claim of ineffective assistance of counsel but conclude that the matter must be remanded to recalculate the fees excluding the penalty assessments and to determine defendant's financial ability to pay attorney fees.

**Factual and Procedural History**

Defendant was charged by amended information with driving or taking a vehicle without consent after a prior conviction (Veh. Code, § 10851; Pen. Code,[2] § 666.5 [count 1]), identity theft (§ 530.5, subd. (a) [count 2]), possession for sale of

---

[1] *In re Williamson* (1954) 43 Cal.2d 651.

[2] All statutory references are to the Penal Code unless otherwise noted.

1

methamphetamine (Health & Saf. Code, § 11378 [count 3]), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a) [count 4]), and misdemeanor receiving stolen property of a value not exceeding $950 (§ 496, subd. (a) [count 5]). The information also alleged that defendant had two prior convictions for which he served a prison term (§ 667.5, subd. (b)).

Because defendant does not challenge the sufficiency of the evidence in support of his convictions, a detailed summary of the trial evidence is unnecessary. We set forth only a summary of basic facts to provide context for the discussion that follows.

A police officer testified that on August 31, 2015, at approximately 3:00 p.m., he received notification that a stolen vehicle was traveling in a nearby area. He drove to the area where he located the stolen car parked with defendant sitting in the driver's seat. The officer observed defendant exit the car and walk behind a set of parked cars. When the officer then detained defendant, he refused to identify himself but stated that he had an identification card in his pants pocket. The officer retrieved a California driver's license from defendant's pocket. Defendant "didn't necessarily look like the same person" as depicted on the license. The officer confronted defendant and asked for his real name and defendant responded that his name is David Donald Webb.

After arresting defendant, the officer walked the route that defendant had taken after exiting the stolen car and recovered from beside the parked cars a small box containing 2.129 grams of methamphetamine and a small electronic scale. Video from the citywide surveillance system showed defendant dropping the box out of his pocket as he walked behind the parked cars. During defendant's booking search following his arrest, the officer found in defendant's pocket six personal bank checks in the name of other individuals, intermingled with other personal items. The officer also recovered from defendant two cell phones, one of which contained text messages and emails relating to drug transactions. Finally, a search of defendant's home uncovered additional methamphetamine and indicia of drug sales.

The jury found defendant guilty as charged and the court found the enhancement allegation to be true. The court denied probation and imposed a five-year sentence

2

consisting of two years in county jail and three years of mandatory supervision. The court imposed, among other fees, a $190 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5), a $570 drug program fee (Health & Saf. Code, § 11372.7) and attorney fees of $500.

Defendant timely filed a notice of appeal.

## Discussion

1.  The *Williamson* Rule

"Under the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute. In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute. [Citation.] . . . [¶] Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' [Citation.] In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute. . . . [¶] On the other hand, if the more general statute contains an element that is not contained in the special statute and that element would not commonly occur in the context of a violation of the special statute, we do not assume that the Legislature intended to preclude prosecution under the general statute. In such situations, because the general statute contemplates more culpable conduct, it is reasonable to infer that the Legislature intended to punish such conduct more severely. . . . [¶] However, that the general statute contains an element not within the special statute does not necessarily mean that the *Williamson* rule does not apply. 'It is not correct to assume that the [*Williamson*] rule is inapplicable whenever the general statute contains an element not found within the four corners of the "special" law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context

3

that a violation of the "special" statute will necessarily or commonly result in a violation of the "general" statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute.' " (*People v. Murphy* (2011) 52 Cal.4th 81, 86-87.)

Defendant contends that his trial attorney provided ineffective assistance in failing to move to dismiss the felony identity theft charge under section 530.5 on the ground that the *Williamson* rule permitted prosecution for his conduct of only misdemeanors under either section 148.9 (false representation of identity to a peace officer) or Vehicle Code section 31 (false information to a police officer).[3]

The jury here was instructed pursuant to CALCRIM No. 2040 that to find defendant guilty of identity theft in violation of section 530.5, subdivision (a), "the People must prove that: [¶] 1. The defendant willfully obtained someone else's personal identifying information; [¶] 2. The defendant willfully used that information for an unlawful purpose; [¶] AND [¶] 3. The defendant used the information without the consent of the person whose identifying information he was using." The jury was further instructed that "An unlawful purpose includes . . . Falsely representing or identifying one's self as another person to a peace officer, upon a lawful detention, to evade the proper identification of himself. [¶] or [¶] Giving information to a peace officer, who is performing his duties under the vehicle code, when he knows the information is false." Defendant concedes that not every violation of section 148.9 or Vehicle Code section 31 results in a violation of section 530.5, subdivision (a) but argues that the rule applies in

---

[3] Section 148.9, subdivision (a) provides that "Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor." Vehicle Code section 31 provides that "No person shall give, either orally or in writing, information to a peace officer while in the performance of his duties under the provisions of this code when such person knows that the information is false."

this instance because the manner in which he violated section 148.9 and Vehicle Code section 31 would commonly result in a violation of section 530.5. We disagree.

Providing false personal identification information to a police officer would, as defendant argues, necessarily establish a violation of the two misdemeanor statutes. That act would not be sufficient, however, to support a conviction for identity theft. To establish a violation of section 530.5 the prosecution must also prove that defendant obtained and used the personal identification information without the consent of the person whose identifying information he was using. We see no basis to assume, as defendant suggests, that false identification provided to a police officer is commonly information willfully obtained from another person and used without consent.

As argued by the Attorney General, section 148.9, subdivision (a), and Vehicle Code section 31 "do not even contemplate the existence of individual victims. These statutes are merely designed to help law enforcement to locate a defendant if he or she does not appear in court, and to ensure proper enforcement of the Vehicle Code." Section 530.5, in contrast, "is designed to protect the public from the uniquely disruptive and pernicious effect of identity theft in the era of ubiquitous electronic transactions." Accordingly, the additional requirement that personal identification information be obtained from another person and used without that person's consent is significant, strongly suggesting that the Legislature intended to punish one who uses false personal identification information taken from another without consent more severely than one who merely fibs to an officer about his or her name. Because a violation of section 148.9 would not necessarily or commonly result in a violation of section 530.5, the *Williamson* rule does not apply and trial counsel did not render ineffective assistance by failing to move to dismiss the identity theft charge on this ground.

2. *Penalty Assessments on Health and Safety Code Fees*

The trial court imposed a criminal laboratory analysis fee under Health and Safety Code section 11372.5, subdivision (a) and a drug program fee under Health and Safety

Code section 11372.7, subdivision (a).[4] The court also imposed various penalty assessments on those fees, resulting in total criminal laboratory analysis fees of $190 and drug program fees of $570. Defendant contends the court erred by applying the additional penalty assessments to the Health and Safety Code fees.[5]

Penalty assessment are monetary charges which, "when applicable, inflate the total sum imposed on the defendant by increasing certain charges by percentage increments. All current penalty assessments are legislatively expressed as a certain dollar amount 'for every ten dollars ($10), or part of ($10),' for the particular fine, penalty, or forfeiture that is subject to the assessments. [Citation.] Thus, for example, if the base fine is $100 and the penalty assessment is $2 for every $10 imposed, the penalty assessment increases the defendant's base fine by $20, or 20 percent. If the same penalty assessment is imposed on a base fine of $105, the penalty assessment is $22, and the percentage increase is slightly more than 20 percent." (*Watts*, *supra*, 2 Cal.App.5th at p. 228.) Penalty assessments imposed under the Penal and Government Codes mandate additional assessments upon every "fine, penalty, or forfeiture" imposed in a criminal case. (See, e.g., Pen. Code, § 1464, subd. (a)(1) ["[T]here shall be levied a state penalty in the amount of ten dollars ($10) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."]; Gov. Code, § 76000, subd. (a)(1) ["[I]n each county there shall be levied an additional penalty in the amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses."].) Penalty assessments are not applicable to monetary charges, usually referred

---

[4] Health and Safety Code section 11372.5, subdivision (a) provides for a "criminal laboratory analysis fee" in the amount of $50 for each separate qualifying offense and Health and Safety Code section 11372.7, subdivision (a) provides for a "drug program fee" in an amount not to exceed $150 for each separate qualifying offense.

[5] Although defendant did not object to the penalty assessments in the trial court, we may consider his argument on appeal because the erroneous imposition of penalty assessments is an unauthorized sentence that may be raised for the first time in this court. (*People v. Watts* (2016) 2 Cal.App.5th 223, 227, fn. 4 (*Watts*).)

6

to as fees, intended to cover a particular governmental program or administrative cost. (*Watts*, *supra*, at p. 228.)

Until recently, the law was settled that both the criminal laboratory analysis fee and drug program fee are subject to imposition of assessments. In *People v. Sierra* (1995) 37 Cal.App.4th 1690, 1696 (*Sierra*), the court concluded that the drug program fee imposed under section 11372.7 is a "fine and/or a penalty to which the penalty assessment provisions of . . . section 1464 and Government Code section 76000 apply." The court reached this conclusion because section 11372.7 "defines the drug program fee as an increase to the 'total fine' and later as a fine in addition 'to any *other penalty*.' " (*Sierra*, at p. 1695.) The court stated this was "[t]he only reasonable interpretation of Health and Safety Code section 11372.7." (*Sierra*, at p. 1696.)[6]

In *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1522 (*Martinez*), the court extended the reasoning of *Sierra* to conclude the criminal laboratory analysis fee imposed under section 11372.5 is also a fine and therefore subject to mandatory penalty assessments. The court held: "Under the reasoning of *Sierra*, we conclude Health and Safety Code section 11372.5 defines the criminal laboratory analysis fee as an increase to the total fine and therefore is subject to penalty assessments." (*Martinez*, *supra,* at p. 1522, see also *People v. Turner* (2002) 96 Cal.App.4th 1409, 1414, fn. 3 [finding this issue "settled" and reaffirming that the criminal laboratory analysis fee is a fine.].)[7]

_____

[6] Health and Safety Code section 11372.7, subdivision (a) reads: "Except as otherwise provided in subdivision (b) or (e), each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense. The court shall increase the total fine, if necessary, to include this increment, which shall be in addition to any other penalty prescribed by law."

[7] Health and Safety Code section 11372.5, subdivision (a) provides that every person who is convicted of a qualifying offense "shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary to include this increment. [¶] With respect to those offenses specified in this subdivision for which a fine is not authorized by other provisions of law, the court shall, upon conviction, impose a fine in an amount not to exceed fifty dollars ($50), which shall constitute the increment prescribed by this section and which shall be in addition to any other penalty prescribed by law."

However, in *Watts*, *supra*, 2 Cal.App.5th at page 231, the court concluded, contrary to the above authority, that the criminal laboratory analysis fee is a fee rather than a fine and, thus, is not subject to penalty assessments. In reaching this conclusion, the *Watts* court rejected the *Martinez* courts' interpretation of the first paragraph of section 11372.5, subdivision (a). The court explained, "As to the statute's reference to 'total fine,' we fail to perceive how the fact that the crime-lab fee increases the 'total fine' necessarily means the fee is itself a 'fine' subject to penalty assessments. Nothing about the statute's use of the phrase 'total fine' is inconsistent with the conclusion that the crime-lab fee simply gets added to the overall charge imposed on the defendant after penalty assessments are calculated." (*Watts*, *supra*, at p. 234.) The court also cited legislative history that "bolsters the conclusion that the Legislature's characterization of the crime-lab fee as a 'criminal laboratory analysis fee' reflects an intent to treat the charge as an administrative fee not subject to penalty assessments" and explained that the fee was intended to defray administrative costs, not for retribution and deterrence. (*Id*. at pp. 234-235, citing *People v. Vega* (2005) 130 Cal.App.4th 183, 195 (*Vega*) ["It is clear to us the main purpose of Health and Safety Code section 11372.5 is not to exact retribution against drug dealers or to deter drug dealing (given the amount of money involved in drug trafficking a $50 fine would hardly be noticed) but rather to offset the administrative cost of testing the purported drugs the defendant transported or possessed for sale in order to secure his conviction."].)

The *Watts* court acknowledged the "interpretive difficulty" posed by the second paragraph of subdivision (a), which calls for imposition of "a fine in an amount not to exceed fifty dollars ($50), which shall constitute the increment prescribed by this section and which shall be in addition to any other penalty prescribed by law" in criminal cases involving an offense " 'for which a fine is not authorized by other provisions of law.' " (*Watts*, *supra*, 2 Cal.App.5th at p. 237.) The court concluded that under this provision, "the crime-lab fee acts as a fine and is, in turn, subject to penalty assessments." (*Id*. at p. 235.) The court explained, however, that as there are at present no offenses for which a fine is not authorized by other provisions of law, the "second paragraph of section

8

11372.5(a) has no current application and, in that sense, is surplusage" (*id*. at p. 236) and should not, in any event, "control over the language in the first paragraph, which currently applies to all covered offenses" (*id*. at p. 234).

Finally, the *Watts* court rejected the argument that the California Supreme Court's decision in *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1153 compels the conclusion that the levies are fines or penalties. In that case, the court held that penalty assessments are "mandatory—and not discretionary—sentencing choices" and upheld the imposition of penalty assessments on the section 11372.5 criminal laboratory analysis fee. (*Talibdeen, supra*, at p. 1153 & fn. 2.) As the *Watts* court explained, however, "[t]he defendant in *Talibdeen* never argued that the assessments were inapplicable, and the Supreme Court never mentioned section 11372.5's language. Instead, the court focused on whether the statutes establishing the state and county penalties gave a sentencing court discretion to waive those assessments, based on a provision allowing waiver ' "[i]n any case where a person convicted of any offense, to which this section applies, is in prison until the fine is satisfied." ' [Citations.] Thus, the court assumed, but never decided, that sentencing courts are required to impose penalty assessments on the crime-lab fee. Consequently, *Talibdeen* is not authority for the proposition that penalty assessments apply to the fee." (*Watts, supra*, 2 Cal.App.5th at p. 231.)

More recently, in *People v. Moore* (2017) 12 Cal.App.5th 558, 560, the court rejected the reasoning in *Watts* and agreed with earlier decisions that "the levy imposed under section 11372.5 constitutes a fine or penalty that is subject to penalty assessments."[8] The court observed initially that "Section 11372.5 uses four different terms to refer to the same levy. Subdivision (a) describes the levy as a 'criminal

---

[8] Still more recently, another court has also disagreed with *Watts* and held that the laboratory analysis fee and the drug program fee are subject to penalty assessments. (*People v. Alford* (2017) 12 Cal.App.5th 964.) This court placed heavy reliance on its view that *People v. Talibdeen, supra,* 27 Cal.4th 1151 controls and that "assessments (regardless of their identification as a fee or fine) 'arising from [criminal] convictions are generally considered punishment.' " (12 Cal.App.5th at pp. 975-976, citing *People v. Alford* (2007) 42 Cal.4th 749, 757 (*Alford*).)

laboratory analysis fee,' 'a fine,' an 'increment,' and a penalty to be imposed 'in addition to any other penalty prescribed by law.' [Citations.] Thus, the labels used by section 11372.5, by themselves, do not clearly answer whether the levy is a fee or a fine or penalty." (*Moore*, *supra*, pp. 563-564.) Nonetheless, the court reasoned that "the language of the statute and the weight of case authority" leads to the conclusion the criminal laboratory analysis fee constitutes a fine or penalty for purposes of penalty assessments. The court reasoned that such an interpretation was necessary to avoid rendering the second paragraph a "nullity" as the *Watts* court had done (*Moore*, *supra*, p. 570) and that "[e]ven if the interplay of base and total fines is imprecisely drawn, the Legislature's redundant inclusion of language granting the trial court the ability to increase the total fine in addition to any other penalty suffices to make section 11372.5 subject to penalty assessments" (*Moore*, *supra,* p. 571).

The court also rejected the conclusion in *Watts* that the statute serves an administrative purpose. The court agreed that the determination of whether a charge is a "fee" or "fine" can be made, in most cases, " 'on the basis of the purpose of the charge imposed. Fines are imposed for retribution and deterrence; fees are imposed to defray administrative costs.' " (*People v. Moore*, *supra*, 12 Cal.App.5th at p. 564.) Unlike the courts in *Watts* and *Vega*, the court in *Moore* concluded that "Section 11372.5 appears to have the dual purposes of a fee and a fine. Subdivision (b) of section 11372.5 provides that the levy be deposited by the county treasurer in a criminalistics laboratories fund. The county may thus 'retain an amount of this money equal to its administrative cost incurred pursuant to this section.' [Citation.] Thus, subdivision (b) signals a fee purpose to the levy. Subdivision (c) proceeds to signal a fine purpose to the statute where it requires the county treasurer to 'annually distribute those surplus funds' from the criminalistics laboratories fund 'in accordance with the allocation scheme for distribution of fines and forfeitures set forth in Section 11502.' [Citation.] In other words, a portion of the levy under subdivision (b) appears to serve the purpose of a fee and subdivision (c) treats the remainder as a fine. Neither purpose predominates over the other." (*Moore*, *supra*, p. 566, fn. omitted.)

The clear conflict between these decisions presumably will require resolution by our Supreme Court. Pending such clarification, we consider the reasoning in *Watts* more persuasive. We are inclined to agree with the observation of the appellate division in *People v. Moore* (2015) 236 Cal.App.4th Supp. 10, 16, that the attempt to resolve the issue based on the plain language of the statutes is "a fool's errand." As that court delicately expressed the matter, "The language used by the Legislature on that topic in this series of code sections at work in fine and fee calculations is, to be polite, too imprecise to permit any reasonable conclusion on that subject to be drawn." (*Ibid.*) The various statutory provisions in question unquestionably use the terms "fee," "fine" and "penalty" interchangeably and inconsistently, so that any attempt to discern the Legislature's intent from the precise wording of the statutes is futile. We agree with the court in *Vega* (130 Cal.App.4th at p. 195) and the Court of Appeal in *Moore* (12 Cal.App.5th at p. 564) that whether a charge is a fee or a fine is normally determined by the purpose for which the charge is imposed. In our view, this criterion is dispositive in the absence of clear statutory language to the contrary.

*Alford, supra,* 42 Cal.4th 749 is instructive. In *Alford*, the court held that the court security fee (§ 1465.8) is not punitive, in part because it had a rational connection to a non-punitive purpose and because the amount of the fee is not dependent on the seriousness of the criminal offense.[9] The court reasoned that the purpose of the fee "was not to punish but to ensure adequate funding for court security." (See *Alford, supra,* p. 758.) Importantly, unlike penalty assessments which also generate funds for court services, the court security fee is a relative small flat fee and not a percentage of the total fine imposed on a defendant. (See *People v. High* (2004) 119 Cal.App.4th 1192, 1197 ["[P]enalty assessment set forth in section 1464[] is a 'garden variety' fine calculated on the size and severity of the base fine imposed."].)

---

[9] Although the issue before the court in *Alford, supra,* 42 Cal.4th 749 was whether retroactive application of the fee violated state and federal prohibitions against ex post facto laws, the analysis seems equally applicable in the present context.

With respect to the criminal laboratory analysis fee, we agree with the courts in *Watts* and *Vega* that the fee serves a primarily administrative function. Health and Safety Code section 11372.5, subdivision (b) expressly provides in part that "The county treasurer shall maintain a criminalistics laboratories fund" into which the criminal laboratory analysis fee shall be deposited and that the "county may retain an amount of this money equal to its administrative cost incurred pursuant to this section. Moneys in the criminalistics laboratories fund shall, except as otherwise provided in this section, be used exclusively to fund (1) costs incurred by criminalistics laboratories providing microscopic and chemical analyses for controlled substances, in connection with criminal investigations, . . . (2) the purchase and maintenance of equipment for use by these laboratories in performing the analyses; and (3) for continuing education, training, and scientific development of forensic scientists regularly employed by these laboratories." Contrary to the decision in *Moore*, we do not believe that the statute serves a "dual purpose" merely because it also provides for deposit of any residual funds in the state General Fund—as is typically required of excess moneys in other public funds.

We reach a similar conclusion with regard to the drug program fee. Health and Safety Code section 11372.7, subdivision (c) directs that funds collected in connection with the drug program fee be deposited into a drug program fund which "shall be allocated by the administrator of the county's drug program to drug abuse programs in the schools and the community, subject to the approval of the board of supervisors."[10] Funding community drug abuse prevention programs is a non-punitive, administrative purpose.

---

[10] Section 11372.7, subdivision (c)(2) requires that "A minimum of 33 percent of the fund shall be allocated to primary prevention programs in the schools and the community. Primary prevention programs developed and implemented under this article shall emphasize cooperation in planning and program implementation among schools and community drug abuse agencies, and shall demonstrate coordination through an interagency agreement among county offices of education, school districts, and the county drug program administrator."

As in *Alford*, neither of the fees is tethered to the seriousness of defendant's criminal conduct. The criminal laboratory analysis fee is a fixed $50. The drug program fee may not exceed $150 and the sliding scale is based not on severity of the offense but on the defendant's ability to pay. Neither fee is sufficiently great to serve as a deterrent. (See *Alford, supra*, 42 Cal.4th at p. 759 ["It is inconceivable that defendant would have decided not to commit his crime had he known in advance that this $20 fee would be imposed."].)

Because the criminal laboratory analysis fee and drug program fee are non-punitive, the trial court erred by imposing penalty assessments on those fees.

3. *Attorney Fees*

Section 987.8 "establishes the means for a county to recover some or all of the costs of defense expended on behalf of an indigent criminal defendant. [Citation.] Under subdivisions (b) and (c) of the statute, an order of reimbursement can be made only if the court concludes, after notice and an evidentiary hearing, that the defendant has 'the present ability . . . to pay all or a portion' of the defense costs. [Citations.] If this finding is made, 'the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability.' " (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1420.)

Here, the trial court ordered defendant to pay a $500 attorney fee. In response to defendant's request that the fees be waived based on his indigent status, the court explained that attorney fees are "not one of the discretionary fines and fees, so the court would not be willing to waive." Although phrased as a request to "waive" the fees, trial counsel's objection must be understood as asserting an objection based on defendant's inability to pay attorney fees. On appeal, defendant clearly asserts that he is indigent and contends that the trial court "was wrong that it did not have discretion not to impose the attorney's fees."

The Attorney General argues that a trial court "has no authority to simply waive attorney's fees for a defendant with the ability to pay." While that may be correct, the court did not find that defendant has the ability to pay the attorney fees. Rather, the court concluded that it was compelled to impose the fees on defendant, apparently without regard to his ability to pay them. The probation report contains little information about defendant's ability to pay attorney fees, indicating that he is a 33 year old man without a high school diploma who has spent the last 15 years of his life either detained or on parole or probation. Since defendant's ability to pay the fees appears questionable, to say the least, we must remand the matter for a determination under section 987.8 of his ability to pay attorney fees. (*People v. Verduzco*, *supra,* 210 Cal.App.4th 1406, 1420-1421 ["If the attorney fees award is in error, remand is permissible for the purpose of determining whether the defendant has the ability to pay attorney fees."].)[11]

## Disposition

The matter is remanded for recalculation of the criminal laboratory analysis and drug program fees without the addition of penalty assessments and a determination of defendant's ability to pay attorney fees under section 987.8. The judgment is affirmed in all other respects.

Pollak, J.

We concur:

McGuiness, P. J.
Siggins, J.

---

[11] Although forfeited by his failure to object in the trial court (*People v. Trujillo* (2015) 60 Cal.4th 850, 858; *People v. Aguilar* (2015) 60 Cal.4th 862, 866), on remand, defendant may also challenge, if appropriate, his ability to pay the drug program fee under Health and Safety Code section 11372.7, subdivision (b).

14

Trial court:                                         Contra Costa County Superior Court

Trial judge:                                         Honorable Diana Becton

Counsel for plaintiff and respondent:    Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, and Dorian Jung, Deputy Attorney General, for Plaintiff and Respondent.

Counsel defendant and appellant:    Alex Green

A147740