Filed 2/13/18; On rehearing

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR MILLAN,<br><br>    Defendant and Appellant. | D071437<br><br><br>(Super. Ct. No. SCD265668) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Howard H. Shore, Judges.  Affirmed in part; reversed in part; remanded for resentencing.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry J. Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.A, III.B, and III.C.

I.

INTRODUCTION AND PROCEDURAL BACKGROUND

After a magistrate denied his motion to suppress, and the trial court denied his renewed motion to suppress, Oscar Millan pled guilty to one count of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 1), admitted having suffered four prior drug-related convictions within the meaning of Health and Safety Code section 11370.2, subdivision (c),[1] and admitted having suffered four prison priors (Pen. Code, §§ 667.5, subd. (b), 668).[2] The trial court sentenced Millan to a 10-year split sentence, consisting of five years in local custody, followed by five years of mandatory supervision. The court imposed an upper term of four years on the substantive offense and imposed consecutive three-year terms on two of the four Health and Safety Code section 11370.2, subdivision (c) enhancements. The court struck the punishment on the remaining two Health and Safety Code section 11370.2, subdivision (c) enhancements and on all four prison prior enhancements. The court also ordered Millan to pay various charges and fines.

On appeal, Millan's primary contention is that the trial court erred in denying his motion to suppress. Millan argues that the trial court should have granted the motion to suppress because law enforcement agents conducted a warrantless search of his rental car

---

[1]    As discussed below, the Legislature recently amended Health and Safety Code section 11370.2, subdivision (c) to narrow the list of prior offenses that qualify a defendant for an enhancement under this provision. (Stats. 2017, ch. 677 (S.B. 180) § 1.) We address the effect of this amendment on Millan's sentence in the text below.

[2]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

without probable cause and the People failed to prove that an exception to the Fourth Amendment's warrant requirement applied. Millan also contends that the trial court erred in imposing penalty assessments on a drug program charge (Health & Saf. Code, § 11372.7, subd. (a)) and a lab analysis charge (*id.*, § 11372.5, subd. (a)) and that this court should reduce the trial court's imposition of a $3,000 restitution fine (Pen. Code, § 1202.4, subd. (a)) and a $3,000 parole revocation restitution fine (*id.*, § 1202.45) to $300 each in accordance with the trial court's purported intention to impose the minimum possible fines that the court could legally impose.

In our initial opinion in this matter, we concluded that the trial court did not err in denying the motion to suppress because there is substantial evidence in the record that Millan implicitly consented to the search at issue. We further concluded that the trial court did not err in imposing penalty assessments on the drug program charge and the lab analysis charge and that there is no basis for reducing the restitution or parole revocation restitution fines. In the unpublished portions of this opinion, we restate those conclusions.

In a petition for rehearing, Millan requests that we grant rehearing and remand the matter to the trial court with directions to strike the enhancements imposed pursuant to Health and Safety Code section 11370.2, subdivision (c). Millan argues that his prior drug-related convictions no longer constitute qualifying convictions under Health and Safety Code section 11370.2, subdivision (c), due to a change in the law effective January 1, 2018, and that the change in the law applies retroactively to him pursuant to *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) and its progeny. In an answer to the petition

3

for rehearing, the People "agree[ ] with [Millan]," and acknowledge that "[a] change in the law eliminates a sentencing enhancement under which [Millan] received an additional six years of custody." The People argue that we should grant rehearing and modify our opinion to remand the matter to the trial court for resentencing.

After the People filed their answer, we granted rehearing. Upon rehearing, in the published portion of this opinion, we conclude that Millan's sentence must be reversed and the matter remanded to the trial court with directions to strike the Health and Safety Code section 11370.2, subdivision (c) enhancements and to resentence Millan.

II.

FACTUAL BACKGROUND

At the change of plea hearing, Millan admitted that he "unlawfully transported controlled substances for the purpose of sales"[3] and that the controlled substance was methamphetamine.

III.

DISCUSSION

A. *The trial court properly denied the motion to suppress because there is substantial evidence in the record that Millan implicitly consented to the search at issue*

Millan contends that the trial court erred in denying his motion to suppress.

---

[3] Because there was no trial in this case, we recite the factual basis for Millan's guilty plea. We discuss the facts related to Millan's motions to suppress in part III.A, *post*.

1. *Factual and procedural background*

   a. *The motion to suppress*

Prior to the preliminary hearing, Millan filed a motion to suppress evidence seized during the search of his rental vehicle, including two clear baggies each containing a "crystalline substance," a digital scale with "suspected methamphetamine residue," and a "small plastic baggie" containing numerous "rolled up plastic baggies." Millan argued that the evidence should be suppressed because it was obtained by law enforcement agents during an illegal search.

   b. *The People's opposition*

The People filed an opposition in which they provided a brief description of the facts of the search. According to the People, on February 9, 2016, law enforcement agents established surveillance of a parked car belonging to a wanted fugitive named Travis Castro. At approximately 10:15 that evening, agents saw Castro drive a Ford Fusion into the parking lot in which his car was parked. Millan was a passenger in the Fusion. After Castro and Millan got out of the car, agents detained the men. An agent asked Millan for his identification. Millan directed the agent to a bag in the backseat of the car, which Millan stated contained his identification. When the agent looked inside the bag, she saw a small plastic bag that contained methamphetamine. The agent also saw a plastic bag that contained rolled up empty plastic baggies. A further search of the bag revealed another plastic bag containing methamphetamine, a digital scale with white residue, and a Social Security card with Millan's name.

After outlining these facts, the People argued that the law enforcement agents reasonably detained Millan. The People argued further that the ensuing search of the vehicle was lawful. In support of this contention, the People maintained that one of the agents had validly asked Millan for his identification, and that Millan had "directed [the agent] to his bag in the backseat of the car, stating that his identification was inside." The People argued that the agent had lawfully discovered the methamphetamine and related paraphernalia while searching for Millan's identification.

c. *The hearing on the motion to suppress*

A magistrate held a combined preliminary hearing and hearing on the motion to suppress. At the hearing, Drug Enforcement Administration Special Agent Lewis Brolick testified. Brolick explained that he had investigated Castro for methamphetamine sales during the summer and fall 2015. Brolick knew that Castro was part of a criminal enterprise involved in distributing large quantities of methamphetamine. In either late November or December 2015, Castro was arrested for selling methamphetamine.

In early February 2016, Castro failed to appear at a court proceeding. A warrant was issued and Brolick began to attempt to locate Castro. Agent Brolick learned that Castro's car (a Lexus) was parked in a Home Depot parking lot. Six agents began to conduct surveillance of the Lexus in an attempt to locate Castro and arrest him on the warrant.

At approximately 10:15 p.m. on the evening of February 9, 2016, after the Home Depot was closed, one of the agents saw a Ford Fusion driven by Castro pull into the parking lot and stop approximately 30 feet from Castro's Lexus. Agents also observed an

6

unknown passenger (later determined to be Millan) with Castro. Castro got out of the Fusion and walked toward the Lexus. Simultaneously, Millan exited the passenger side of the Fusion and began walking toward the rear of the Fusion. Agents emerged from their concealed positions with their guns drawn and ordered Castro and Millan to the ground.

While Castro and Millan were on the ground, agents placed both men in handcuffs. Agent Brolick explained that the agents had reason to believe that Castro was in the process of leaving the area and Brolick feared that Castro might attempt to flee from the agents by foot or in a vehicle.

According to Agent Brolick, the agents detained Millan because they believed that he might be assisting Castro with his flight effort. Brolick explained that, in the course of investigating Castro's whereabouts, the agents had learned that an unidentified person had rented a car. Brolick suspected that the person who had rented the car might be helping Castro's flight effort.[4]

Agent Brolick stated that the agents also detained Millan for officer safety reasons. In explaining those reasons, Brolick stated that he knew that Castro was a fugitive involved in narcotics sales, and also knew that narcotics and firearms went "hand-in-hand." In addition, Brolick testified that, in December 2015, Castro told Brolick that "some of his counterparts had access to firearms."

---

4    During portions of his testimony, Agent Brolick invoked the privilege under Evidence Code section 1040 against disclosure of "information acquired in confidence by a public employee in the course of his or her duty . . . ." (Evid. Code, § 1040, subd. (a).)

7

Agents searched Castro and found 44 grams of methamphetamine and a debit card bearing the name of an unknown third party.

Special Agent Erin Knight-Grimming also testified at the hearing. Knight-Grimming stated that after agents detained Millan, she approached Millan and asked him whether he had any identification. Knight-Grimming explained that learning Millan's identity was important in helping the agents determine whether Millan had assisted Castro in attempting to flee the area. Millan responded that he had a driver's license, that he had just had the license in his hand, and that the license might be in the Fusion. Millan also told Knight-Grimming that his name was Oscar Millan.

Agent Knight-Grimming testified that due to concerns for officer safety, she did not permit Millan to retrieve the identification from the Fusion. In describing these concerns, Knight-Grimming stated that, in addition to the area being dark, Castro had just been inside the vehicle. Knight-Grimming explained that, given Castro's criminal background and his at-large felon status, the agents did not want Millan to go into the vehicle. Knight-Grimming continued, "[Millan had] given us the authorization to look for [the license] in the vehicle, and so for that reason, we kept him outside of the vehicle."

Agent Knight-Grimming began to search inside the Fusion's passenger area for Millan's driver's license, but was unable to locate it. Knight-Grimming did, however, find a rental agreement for the Fusion that had Oscar Millan's name on it. When Knight-Grimming told Millan that she had been unable to find his identification, Millan appeared confused and responded, "I know I just had it, it has to be there somewhere." Knight-

8

Grimming searched on the driver's side of the Fusion, but still was unable to find Millan's identification.

Agent Knight-Grimming asked Millan if there were any other places where the license could possibly be. According to Knight-Grimming, Millan said that his license might be in one of several bags that were in the backseat of the Fusion. Knight-Grimming opened the back passenger door and saw several bags. Knight-Grimming asked Millan which of the bags the license would be in. Knight-Grimming testified that Millan responded that he did not know, and "to check them."

Agent Knight-Grimming opened a small camera case and found no identification inside. She told Millan that she had not found the identification in the camera case. Millan continued to appear confused. Knight-Grimming scanned the next closest bag to her with her flashlight. As she shined her flashlight at the bag, Knight-Grimming saw a mesh pocket on the side of the bag. Through the "see . . . through" mesh, Knight-Grimming saw "a plastic baggie . . . containing an off-white opaque crystalline substance," later determined to be methamphetamine.

Agent Knight-Grimming and another agent opened the bag with the mesh pocket on the side, to continue to look for Millan's identification. Knight-Grimming found a wallet containing Millan's Social Security card. Knight-Grimming also found a sunglasses case with another plastic baggie inside that also contained methamphetamine. In addition, Knight-Grimming found a digital scale in a second sunglasses case.

d. *The magistrate's denial of the motion to suppress*

At the conclusion of the hearing on the motion to suppress, the magistrate denied the motion, reasoning in part:

> "Initially, I believe that there was reasonable cause to detain given the circumstances here. [¶] We have Mr. Castro . . . out on a warrant and the officers had other information about Mr. Castro. Given the hour, the remoteness of the parking lot at that hour, [the agents] certainly had cause to detain him [Castro] and anyone with him for [their safety] . . . they don't know what they're dealing with under [the] circumstances, and Mr. Castro is a pretty serious [character] in terms of criminal activity. So, I [think] that they have a right to detain him [Millan].[5]
>
> "The next [question] is whether they had a right to search the [vehicle] for the registration or license for the [defendant's license]. The case law seems to say that there is no [problem] that police officers may enter a stopped vehicle [in order] to get a license and registration if [they need] to find that . . . .
>
> "In this [case], they kept asking [Millan], where is the [license and] he kept telling them where to look. That [is] the . . . place they looked until they found it. [Then] in [plain] sight, see the methamphetamine. Once they find that [in] plain sight, they have probable cause to search [the vehicle]."

The magistrate also bound Millan over for trial.

e. *Millan's renewed motion to suppress*

Millan renewed his motion to suppress in the trial court and the People filed an opposition to the renewed motion to suppress.

---

5    Our use of brackets and ellipses with respect to this quotation is due in part to the fact that portions of the electronic image of this page of the preliminary hearing transcript are illegible. However, most of the text can be determined by context and the illegible portions do not materially affect our understanding of the court's reasoning.

The trial court held a hearing on the renewed motion to suppress during which the parties stipulated to use the preliminary hearing transcript for purposes of the proceeding. After hearing argument from both parties, the court denied the renewed motion to suppress. The court determined that the initial detention was lawful, was not unlawfully prolonged, and did not constitute a de facto arrest. The trial court also found that "the search was valid in this case, because consent was given by [Millan]." The court reasoned:

> "Here [Millan] gave the agents consent to search the car and the bags inside the car for purposes of identification. And there is no evidence that [Millan] was coerced in[to] giving that consent. And, finally, even if [Millan] did not give consent, the agent had authority to search for identification. The case of *People v. Hart* [(1999) 74 Cal.App.4th 479 (*Hart*)] seems to control this case."

2.  *Governing law*

    a.  *The standard of review applicable to the review of a motion to suppress*

"Where, as here, a motion to suppress is submitted to the superior court on the preliminary hearing transcript, 'the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of reasonableness.' [Citation.] 'We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment. [Citation.]' [Citation.] We affirm the trial

11

court's ruling if correct under any legal theory." (*People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

   b. *The Fourth Amendment's protection against unreasonable searches*

"The Fourth Amendment guarantees individuals the 'right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .' (U.S. Const., 4th Amend.) Under the Fourth Amendment, a warrantless search is unreasonable per se unless it falls within one of the 'specifically established and well-delineated exceptions.' " (*People v. Baker* (2008) 164 Cal.App.4th 1152, 1156–1157.) Thus, " ' "police officers may not . . . search a suspect without probable cause and an exception to the warrant requirement . . . ." ' " (*In re H.M.* (2008) 167 Cal.App.4th 136, 142.)

   c. *The law governing consensual searches*

One such "recognized exception to the Fourth Amendment's proscription against warrantless searches is a search that is based upon consent." (*People v. Superior Court* (*Walker*) (2006) 143 Cal.App.4th 1183, 1198.) "[C]onsent to a search need not be express but may be fairly inferred from context . . . ." (*Birchfield v. North Dakota* (2016) 136 S.Ct. 2160, 2185.) However, "[c]onsent that is the product of an illegal detention is not voluntary and is ineffective to justify a search or seizure." (*People v. Zamudio* (2008) 43 Cal.4th 327, 341.)

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." (*Schneckloth v. Bustamonte* (1973) 412 U.S.

218, 227.) "The question of the voluntariness of the consent is to be determined in the first instance by the trier of fact; and in that stage of the process, 'The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the [trier of fact]. On appeal all presumptions favor proper exercise of that power, and the [trier of fact's] findings—whether express or implied— must be upheld if supported by substantial evidence.' " (*People v. James* (1977) 19 Cal.3d 99, 107 (*James*).)

    3. *Application*

Millan raises two arguments in support of his contention that the search was not lawfully based on consent. First, Millan contends that any consent was unlawfully obtained because he had been placed under an "illegal de facto arrest" since agents detained him at gunpoint and placed him in handcuffs. We disagree. There is substantial evidence to support both the magistrate's finding that agents reasonably detained Millan and the magistrate's implied finding that the manner by which the agents detained Millan did not convert the detention into an arrest.

With respect to the reasonableness of the detention, Millan was a passenger in a car with Castro, a known fugitive, as the two arrived at a business's parking lot near Castro's car that agents were surveilling late at night, after the business was closed. In addition, there is evidence in the record that agents suspected that an unidentified person was assisting Castro in his attempt to flee the area. These facts justified the agents' detention of Millan in order to investigate whether Millan was assisting Castro in

13

avoiding arrest.  (*People v. Zaragoza* (2016) 1 Cal.5th 21, 56 ["a detention must be supported by reasonable suspicion the person is involved in criminal activity"].)

We are not persuaded by Millan's contention that the fact that agents detained him at gunpoint and then handcuffed him "amounted to an arrest because there was no reasonable basis to believe that [Millan] presented a physical threat to the [agents] or that he would flee."  As discussed *ante*, the agents reasonably suspected that Millan was assisting the flight efforts of Castro.  Castro was known by the agents to be a fugitive involved with a criminal organization that distributed large quantities of methamphetamine.  In addition, Castro had recently told law enforcement agents that his associates had access to firearms.  Under these circumstances, the agents acted reasonably in detaining Millan at gunpoint and placing him in handcuffs.  Further, there is no evidence that Millan was detained or handcuffed for a prolonged period of time.  Indeed, it appears from Agent Knight-Grimming's testimony that the search of Millan's rental vehicle took place shortly after his detention, while the agents conducted their investigation into the reason for his presence with Castro.  These facts constitute substantial evidence that the handcuffing of Millan during the agents' detention of Millan and investigation into his activities was reasonable and did not amount to an illegal de facto arrest.  (See, e.g., *People v. Celis* (2004) 33 Cal.4th 667, 675 ["stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period, as occurred here, do not convert a detention into an arrest"].)

Second, Millan contends that, even assuming he was not subjected to an illegal arrest, "the record does not support the conclusion that the consent was lawful."  Millan

14

raises several arguments in support of this contention. Millan notes that there is no evidence that the agents ever advised him of his right to refuse to consent to the search. We assume, strictly for purposes of this decision, that Millan had the legal right to refuse to consent to a search of the rental car for his identification. (But see *Hart*, *supra*, 74 Cal.App.4th 479 [concluding officer reasonably searched purse found inside of van for van occupant's identification notwithstanding that occupant stated, "she did not want him to search the van" (*id.* at p. 485), reasoning, "If officer safety warrants . . . the officer may control the movements of the vehicle's occupants and retrieve the license himself" (*id.* at p. 489)].) However, even assuming that Millan had the right to refuse to consent to a search of the vehicle for his identification, the law is clear that agents were under no obligation to admonish him of such a right. (*James*, *supra*, 19 Cal.3d at p. 115.)[6]

Further, while Millan argues that his "consent could not be implied based on his lack of objection," the magistrate did not find merely that Millan failed to object to Agent Knight-Grimming's search. Rather, the magistrate reasonably found that the agents "kept asking [Millan], where is the [license and] he *kept telling them where to look*." (Italics added.) Agent Knight-Grimming testified that, when she asked Millan which of the bags his license might be in, Millan responded that he did not know and instructed her "to check them." Knight-Grimming also testified that "[Millan had] given us the authorization to look for [the license] in the vehicle . . . ." This testimony supports the

---

6      Millan properly acknowledges this in his brief.

magistrate's finding that Millan implicitly consented to the search that led to the discovery of the methamphetamine and related paraphernalia.

Finally, we acknowledge that there is evidence in the record upon which a reasonable trier of fact might have found that Millan was merely submitting to authority rather than consenting to the search. (*James*, *supra*, 19 Cal.3d at p. 106 [defendant's consent to a search must be a "product of his free will and not a mere submission to an express or implied assertion of authority"].) Specifically, evidence that Millan had been detained and was in handcuffs and that there were several armed agents nearby is consistent with a finding that Millan was merely submitting to authority when he told the agent where she should look for his driver's license. (See *id.* at pp. 109–110.) However, we cannot say that, based on this evidence, the magistrate was *required* to find, as a matter of law, that Millan did not implicitly consent to the search. (See *ibid.* [evidence that defendant was under arrest and in handcuffs did not establish that defendant had not freely consented to search].) There was no evidence that the agents made threats of any kind, or used trickery or employed other coercive techniques in order to obtain Millan's consent to search the vehicle for his identification. (See *id.* at pp. 111–113 [outlining the types of coercive techniques employed by law enforcement officers that may vitiate a defendant's consent].) Further, there is no evidence of Millan's demeanor or mental state that suggests that he permitted the agents to search the car based upon fear or submission to authority.

Under these circumstances, we conclude that there is substantial evidence in the record that Millan implicitly consented to the search. We therefore conclude that Agent

16

Knight-Grimming's search was reasonable under the Fourth Amendment and that the trial court did not err in denying Millan's motion to suppress.[7]

B. *The trial court did not err in imposing penalty assessments on the drug program charge (Health & Saf. Code, § 11372.7, subd. (a)) and the lab analysis charge (Health & Saf. Code, § 11372.5, subd. (a))*

Millan contends that the trial court erred in imposing penalty assessments on the drug program charge (Health & Saf. Code, § 11372.7, subd. (a)) and the lab analysis charge (*id.*, § 11372.5, subd. (a)). In his reply brief, Millan acknowledges that this court rejected an identical argument in *People v. Alford* (2017) 12 Cal.App.5th 964, 967 (*Alford*), review granted September 13, 2017, S243340. We adhere to our decision in *Alford*, and await further guidance from our Supreme Court.[8] Accordingly we conclude that the trial court did not err in imposing penalty assessments on the drug program charge (Health & Saf. Code, § 11372.7) and the lab analysis charge (*id.*, § 11372.53).

---

[7]     In light of our conclusion, we need not consider Millan's contention that the search did not constitute a valid search incident to Castro's arrest under *Arizona v. Gant* (2009) 556 U.S. 332, nor the People's related contention that the "discovery of [Millan's] methamphetamine . . . was inevitable," because "Castro's offense of arrest included the 44 grams of methamphetamine," and thus, law enforcement agents would have legally searched the vehicle incident to Castro's arrest. Nor need we consider Millan's contention that the search was not a permissible search for identification under *People v. Webster* (1991) 54 Cal.3d 411, and its progeny.

[8]     (See *Alford*, *supra*, 12 Cal.App.5th at p. 967, fn. 2 ["We would welcome the California Supreme Court granting a review petition to resolve the conflict among the Courts of Appeal on this statutory construction issue. The judicial and public attorney resources devoted to the issue (including many published and nonpublished appellate decisions) have likely far outweighed the penalties collected"].)

C. *Millan's contention that this court should reduce both the restitution fine (§ 1202.4) and the parole revocation restitution fine (§ 1202.45) from $3,000 to $300 is forfeited; Millan's trial counsel did not provide ineffective assistance in failing to object to the trial court's imposition of restitution and parole revocation fines in the amount of $3,000 each*

Millan claims that this court should reduce the restitution (§ 1202.4) and parole revocation (§ 1202.45) fines from $3,000 each to $300 each because it is "clear" from the record that the trial court intended to impose the minimum possible fines that the court could legally impose, and that amount is $300. Millan claims that, to the extent this court concludes that this claim is forfeited, his counsel provided ineffective assistance in failing to object to the court's imposition of restitution (§ 1202.4) and parole revocation (§ 1202.45) fines of $3,000 each.

1. *Governing law*

a. *Applicable statutory law*

At the time of Millan's commission of the February 2016 offense, former section 1202.4 provided in relevant part:

> "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record.
>
> "(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than . . . three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000). . . .
>
> "(2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony

18

counts of which the defendant is convicted." (Stats. 2015, ch. 569, § 15.)[9]

Section 1202.45, subdivision (a) provides, "(a) In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4."

b. *The contemporaneous objection requirement*

Where, as in this case, a trial court imposes a restitution fine or parole revocation fine within the authorized statutory range,[10] a defendant who fails to object to the trial court's imposition of the fine forfeits any appellate claim that the trial court erred in its imposition of the fine. (See, e.g., *People v. Pinon* (2016) 6 Cal.App.5th 956, 968 (*Pinon*).)

c. *Ineffective assistance of counsel*

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness," evaluated "under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688; accord, *People v. Ledesma* (1987) 43 Cal.3d 171,

---

[9] In imposing a restitution fine, a trial court is required to apply the statute "in effect when [an] appellant committed his crimes." (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1190.)

[10] Millan does not contend that the trial court imposed an unauthorized fine.

19

216.) "Counsel is not ineffective for failing to raise futile objections." (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 1002 (*Ramirez*).)

2. *Factual and procedural background*

At sentencing, the trial court stated the following:

> "I'm going to impose the minimal amount of fines. Let me just check and see what the minimum is under [section] 1202.4. Just give me a moment.
>
> "Okay. The minimum starting on January 1st, 2013, under 1202.4[, subdivision (b)(1)] is $300, so I will impose a restitution fine pursuant to . . . [section] 1202.4[, subdivision (b)] in the amount of $3,000. That's the ten years multiplied by the $300 minimum and not the [$5,400] that is indicated[.[11]] [¶] And then pursuant to . . . section 1202.45, an additional $3,000, but that will be stayed and remain so unless defendant's supervision is revoked[.]"

3. *Application*

Millan did not object to the trial court's imposition of either fine in the trial court. The claim is thus forfeited. (*Pinon*, *supra*, 6 Cal.App.5th at p. 968.)

Millan also contends that to the extent this court determines that his claim is forfeited, we should determine that Millan's trial counsel provided ineffective assistance in failing to object to the court's imposition of a restitution fine in the amount of $3,000 and a parole revocation fine in the same amount. Millan argues that "there could be no

---

[11]    The probation report recommended that the court impose a restitution fine (§ 1202.4, subd. (b)) in the amount of $5,400 and a parole revocation restitution fine (§ 1202.45) in the amount of $5,400. The report also recommended that the court impose an 18-year prison sentence. Thus, the $5,400 appears to have been based on an application of the statutory formula contained in section 1202.4, subdivision (b)(2).

reasonable explanation for counsel's failure to object to [the] imposition of a $3,000 fine where it was clear the court wanted to impose the minimum fine." We are not persuaded.

While Millan contends that the trial court erred in concluding that the statutory formula provided in section 1202.4, subdivision (b)(2) is mandatory rather than discretionary, the court's statements in imposing the fine do not demonstrate that the court believed that the statutory formula was mandatory. Further, the trial court clearly expressed an intention to impose a total aggregate fine *above* the statutory minimum of $300. The court's statements are most naturally read as indicating that the court was "determin[ing] the amount of the fine as the product of the minimum fine pursuant to paragraph (1) [i.e., $300] multiplied by the number of years of imprisonment the defendant is ordered to serve [i.e., 10], multiplied by the number of felony counts of which the defendant is convicted [i.e., 1]." (§ 1202.4, subd. (b).)

Accordingly, trial counsel could have reasonably determined that the court intended to impose a restitution fine (§ 1202.4) of $3,000 by applying the discretionary statutory formula contained in section 1202.4, subdivision (b). Millan thus cannot demonstrate that counsel was ineffective for failing to raise an objection to the fine because counsel may have reasonably determined that such an objection would have been overruled. (See *Ramirez*, *supra*, 109 Cal.App.4th at p. 1002 [trial counsel is not required to raise futile objections].)

D. *Due to a change in the law, Millan's sentence must be reversed and the matter remanded to the trial court with directions to strike the enhancements imposed under Health and Safety Code section 11370.2, subdivision (c) and to resentence Millan*

In a petition for rehearing, Millan argues that his sentence must be reversed because his prior convictions for violations of Health and Safety Code sections 11379 and 11378 no longer constitute qualifying convictions under Health and Safety Code section 11370.2, subdivision (c) due to an amendment to that statute that applies retroactively to him pursuant to *Estrada*. In an answer, the People acknowledge that the amendment to Health and Safety Code section 11370.2, effective January 1, 2018, would apply to Millan pursuant to *Estrada* and that his current sentence would be unauthorized as of that date.[12]

1. *The amendment to Health and Safety Code section 11370.2*

Former Health and Safety Code section 11370.2, subdivision (c) provided in relevant part:

> "Any person convicted of a violation of, or of a conspiracy to violate, Section . . . 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, *11378*, 11378.5, *11379*, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment." (Italics added.)

---

[12] After the People filed their answer, we issued an order granting rehearing and permitting the parties to file further supplemental briefs and to request oral argument. Neither party has filed an additional brief or requested oral argument.

Senate Bill 180, effective January 1, 2018, removes a number of prior convictions from the list of prior convictions that qualify a defendant for the imposition of an enhancement under section 11370.2, subdivision (c). Among those convictions that no longer serve to qualify a defendant for an enhancement under Health and Safety Code section 11370.2, subdivision (c) are convictions for violations of Health and Safety Code sections 11379 and section 11378.

Health and Safety Code section 11370.2, subdivision (c) currently provides:

> "Any person convicted of a violation of, or of a conspiracy to violate, [Health and Safety Code] Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11380, whether or not the prior conviction resulted in a term of imprisonment." (Stats. 2017, ch. 677 (S.B. 180) § 1, eff. Jan 1, 2018.)

2. *Estrada*

In *Estrada*, *supra*, 63 Cal.2d 740, the California Supreme Court created a limited exception to the ordinary rule that statutes apply prospectively, as follows:

> "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Id.* at p. 745.)

23

"The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses." (*People v. Nasalga* (1996) 12 Cal.4th 784, 792; see, e.g., *People v. Figueroa* (1993) 20 Cal.App.4th 65, 69–71 [drug trafficking enhancement].)

"A judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari [with the United States Supreme Court] have expired." (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1465.)

3. *Application*

We agree with the parties that *Estrada* applies in this case and that the recent amendment to Health and Safety Code section 11370, subdivision (c) requires the reversal of Millan's sentence.[13] It is undisputed that the amendment to Health and Safety Code section 11370, subdivision (c) lessens punishment for a person such as Millan whose prior convictions no longer qualify for the three-year Health and Safety Code section 11370, subdivision (c) enhancement. Rather than being subjected to a three-year enhancement for each prior conviction, such persons are no longer subject to *any* enhanced punishment pursuant to the amended statute. It is also undisputed that Millan's case is pending on appeal, and is thus not yet final. Accordingly, *Estrada* applies, and requires reversal of Millan's sentence. On remand, the trial court is directed to strike the

---

[13]    (See *People v. Zabala* (2018) 19 Cal.App.5th 335, 338 ["vacat[ing] the trial court's imposition of a three-year sentencing enhancement under Health and Safety Code former section 11370.2, subdivision (c), in light of the newly enacted version of that statute effective January 1, 2018"].)

Health and Safety Code section 11370.2, subdivision (c) enhancements and to resentence Millan.

IV.

DISPOSITION

Millan's sentence is reversed and the matter is remanded to the trial court with directions to strike the Health and Safety Code section 11370.2, subdivision (c) enhancements and to resentence Millan.  In all other respects, the judgment is affirmed.


AARON, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.

25